TROY A. EID
United States Attorney
District of Colorado
1225 Seventeenth Street
Denver, CO 80202

RICKEY WATSON
MICHAEL G. PITMAN
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 683
Ben Franklin Station
Washington, D.C. 20044-0683
Telephone: (202) 305-7938

UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | |
|---|---|
| Abraham J. Osman, & Dorothy K. Osman,<br><br>    Plaintiffs,<br><br>         v.<br><br>United States of America,<br><br>    Defendant. | Civil No.  06-cv-2318-MSK-MJW |

**JOINT PROPOSED PRETRIAL ORDER**

Pursuant to the Court's Order dated January 2, 2008, Plaintiffs Abraham J. and Dorothy K. Osman ("Plaintiffs"), and Defendant the United States of America ("United States"), by and through their undersigned counsel, herby jointly submit the following Proposed Pretrial Order.[1]

---

[1] This Proposed Pretrial Order is submitted in the event, and premised entirely upon the assumption, that the Court denies the United States' outstanding Motion for Summary Judgment. Accordingly, this Proposed Pretrial Order is subject to amendment should the Court resolve the United States' Motion in any way other than a complete denial.

## 1. DATE AND APPEARANCES

The Final Pretrial Conference is scheduled for January 31, 2008 at 2:00 pm.

Plaintiffs will be represented by Kevin A. Planegger, and the United States of America will be represented by Michael G. Pitman

## 2. JURISDICTION

The parties agree that the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1346(a)(1).

## 3. CLAIMS AND DEFENSES

*Claim 1: Refund of income taxes and interest pursuant to 26 U.S.C. § 7422 under the "claim of right" doctrine, codified at 26 U.S.C. § 1341.*

Plaintiffs have the burden of proof by a preponderance of the evidence.

**Elements:** **(1) & (2)  Item was included in gross income for a prior taxable year because it appeared that the taxpayer had an unrestricted right;**

    (a) the parties stipulate that these elements are satisfied

**(3) A deduction was allowable for the taxable year;**

    (a) the deduction was allowable as a loss incurred in a transaction entered into for profit pursuant to Section 165(c)(2) of the Internal Revenue Code.  (Testimony of Plaintiff Abraham J. Osman)

**(4) It was established after the close of such prior taxable year that the taxpayer did not have an unrestricted right;**

    (a) the Plaintiffs did not have an unrestricted right to the previously reported income because they had a legal obligation to restore the amount of the overpayment on the sale of Schlosser.  (Testimony of Plaintiff Abraham J. Osman)

**(5) The amount of the deduction exceeds $3,000; and**

    (a) the parties stipulate that this elements is satisfied

2

      **(6) Plaintiffs are entitled to a refund of $65,421.**

          (a) the calculation for the amount of the refund based on the income that was over reported by the Plaintiffs in the tax years 1993 through 1998.  (Testimony of Plaintiff Abraham J. Osman, Exhibit: Refund Claim – Form 1065)

## 4.  STIPULATIONS

**Factual Stipulations:**

- Plaintiffs transferred all 500 shares of their business, the Schlosser Tool & Machinery Company ("Schlosser"), to their son and daughter-in-law on December 31, 1992 (the "1992 Transfer").
- As of 1992, Plaintiffs' son was as knowledgeable about the day-to-day operations of Schlosser, as well as Schlosser's finances, as Plaintiffs.
- Schlosser's value was determined in advance of the 1992 Transfer by an appraising company, Quist Valuation, Inc. ("Quist"), which performed an analysis in October 1992 and determined that Schlosser was worth $1,644,500.
- Plaintiffs hired and paid Quist.
- Plaintiffs' son and daughter-in-law never hired, or even considered hiring, an attorney to represent them with respect to the 1992 Transfer.
- Plaintiffs' son and daughter-in-law never hired, or even considered hiring, an independent appraiser to evaluate Schlosser before engaging in the 1992 Transfer, nor did they conduct any independent due diligence, whatsoever.
- Plaintiffs never warrantied that Schlosser's shares had been valued correctly.
- Once the Quist valuation was complete, Plaintiffs gave 364 shares of Schlosser to their son and daughter-in-law, and sold the remaining 136 shares to them for $447,304, which Plaintiffs' son and daughter-in-law agreed to pay-off, plus interest, in 120 monthly payments.
- Plaintiffs would have given the entire company to their son and daughter-in-law as a gift had they not been operating under the belief that it was impossible to do so without incurring negative tax consequences.
- Plaintiffs reported principal and interest received from their son and daughter-in-law from the sale portion of the transaction on their federal income tax returns.
- If they had been transferring Schlosser to an unrelated third-party, Plaintiffs would have sold all the shares and given none as a gift.

- Plaintiffs' primary motive for entering into the 1992 Transfer was not economic profit.

- Sometime after the 1992 Transfer was complete and Plaintiffs' son and daughter-in-law took over as the day-to-day operators of Schlosser, the business began to experience financial problems.

- During 1997 and 1998 Plaintiffs lent more than $300,000 to their son and Schlosser, and Schlosser's debt to equity ratio was increasing while the stockholders' equity was decreasing.

- During this period, Schlosser's deteriorating financial condition put it in violation of a $335,804 loan from Wells Fargo bank, and Wells Fargo consequently demanded repayment of the entire loan at once.

- By the end of 1998, Schlosser's ability to continue as a going concern was in doubt.

- Plaintiffs' son and daughter-in-law concluded that Schlosser's financial problems were due to preexisting accounting problems allegedly uncovered after the 1992 Transfer.

- In July 1999, Quist was hired to perform a retroactive valuation of Schlosser in light of these alleged accounting problems.

- Quist concluded that Schlosser had been overvalued by $333,000 at the time of the 1992 Transfer.

- Plaintiffs had no knowledge of the alleged accounting problems or the alleged overvaluation prior to the July 1999 revaluation, nor did they ever seek to conceal any alleged accounting problems or alleged overvaluation at any time.

- Schlosser's accountants, Baird, Kurtz & Dobson ("BKD"), may have been at least partially responsible for the alleged overvaluation since they had been paid to evaluate Schlosser's financial condition prior to the 1992 Transfer and had not discovered the alleged accounting problems.

- BKD offered to forgive $20,000 to $25,000 worth of debt owed to it by Schlosser in exchange for an agreement that Schlosser would not sue BKD for failing to uncover the alleged accounting problems. Schlosser accepted BKD's offer.

- Neither Schlosser, Plaintiffs, nor Plaintiffs' son and daughter-in-law ever took any legal action to seek compensation for the alleged accounting problems or the alleged overvaluation from any individual or entity.

- Once the alleged overvaluation was uncovered, Plaintiffs and their son and daughter-in-law entered into amicable discussions regarding a restructuring of the 1992 Transfer.

- Plaintiffs' son and daughter-in-law never hired, or even considered hiring, an attorney to represent them with respect to the alleged overvaluation.

4

- Plaintiffs' son and daughter-in-law never filed, or even considered filing, a lawsuit against Plaintiffs with respect to the alleged overvaluation.

- Plaintiffs and their son and daughter-in-law eventually agreed to enter into a "Compromise Agreement" in which they agreed that: Schlosser had been overvalued by $335,804 in 1992; Plaintiffs' son and daughter-in-law had overpaid $46,351 worth of interest since 1992; the overvaluation was Plaintiffs' responsibility; and Plaintiffs should refund the alleged $382,155 overvaluation.

- There were literally no adversarial negotiations regarding how the Compromise Agreement would be structured – Plaintiffs offered to repay the entire alleged overvaluation without ever disputing their liability.

- Plaintiffs would have offered to repay the entire alleged overvaluation even if they knew for a fact that they could never have been held liable for the alleged overvaluation.

- The gift portion of the 1992 Transfer consisted of 73% of the shares of Schlosser, while the sale portion consisted of only 27% of the shares.

- When it was decided that Schlosser had been overvalued by $335,804, Plaintiffs refunded 100% of the alleged overvaluation despite the fact that their son and daughter-in-law had only actually purchased 27% of the company.

## 5.  PENDING MOTIONS

**Pending Motions:**

The United States' Motion for Summary Judgment, filed on September 7, 2007 (Doc. # 23), is currently pending.  Plaintiffs opposed the United States' Motion on October 10, 2007, and the United States filed its Reply on November 9, 2007.

## 6.  WITNESSES

Please see attached joint witness list.

## 7.  EXHIBITS

Please see attached joint exhibit list.

**8.  DISCOVERY**

Discovery has been completed.

**9.  SPECIAL ISSUES**

None.

**10.  SETTLEMENT**

A.  Counsel for the parties conferred via telephone on January 17, 2008, to discuss in good faith the settlement of the case.

B.  The participants in the settlement conference included counsel.

C.  The parties were promptly informed of all offers of settlement.

D.  Counsel for the parties do intend to hold future settlement conferences once the United States' dispositive motion has been resolved.

E.  It appears from the discussion by all counsel that there is no possibility of settlement pending a resolution of the United States' dispositive Motion.

F.  No future settlement conference has been scheduled.

G.  Counsel for the parties considered ADR in accordance with D.C.COLO.LCivR.16.6.

**11. OFFER OF JUDGMENT**

Counsel acknowledge familiarity with the provision of rule 68 (Offer of Judgment) of the Federal Rules of Civil Procedure.  Counsel have discussed it with the clients against whom claims are made in this case.

**12. EFFECT OF FINAL PRETRIAL ORDER**

Hereafter, this Final Pretrial Order will control the subsequent course of this action and the trial, and may not be amended except by consent of the parties and approval by the court or by order of the court to prevent manifest injustice.  The pleadings will be deemed merged herein.  This Final Pretrial Order supersedes the Scheduling Order. In the event of ambiguity in any provision of this Final Pretrial Order, reference may be made to the record of the pretrial conference to the extent reported by stenographic notes and to the pleadings.

**13. TRIAL AND ESTIMATED TRIAL TIME; FURTHER TRIAL PREPARATION PROCEEDINGS**

1. Trial is to a jury;

2. It is estimated that trial will take two days; and

3. Trial will occur at the Alfred A. Arraj United States Courthouse in Denver.

DATED this _____ day of _____ 2008.

                                                      BY THE COURT:

                                                     _____

                                                   United States Judge

APPROVED:

| | |
|---|---|
| s/ Kevin A. Planegger | s/ Michael G. Pitman |
| GARRET MARSH FRANCIS | TROY A. EID |
| KEVIN A. PLANEGGER | United States Attorney |
| THEODORE (TED) H. MERRIAM | RICKEY WATSON |
| Merriam Law Firm, P.C. | MICHAEL G. PITMAN |
| 1625 Broadway, #770 | Trial Attorneys, Tax Division |
| Denver, CO 80202 | U.S. Department of Justice |
| (303) 592-5404 | P.O. Box 683 |
| Fax: (303) 592-5439 | Ben Franklin Station |
| Counsel for Plaintiffs | Washington, D.C. 20044-0683 |
| | (202) 305-7938 |
| | Fax: (202) 307-0054 |
| | Counsel for Defendant |